# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JEAN KARLO CONQUISTADOR, | : | |
| Plaintiff, | : | No. 3:19-cv-1965 (KAD) |
| | : | |
| v. | : | |
| | : | |
| ROBERT MARTIN, et al., | : | |
| Defendants. | : | |
| | : | |

## INITIAL REVIEW ORDER

**Preliminary Statement**

Plaintiff, Jean Karlo Conquistador ("Conquistador"), currently confined at Bridgeport Correctional Center in Bridgeport, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983. Conquistador asserts claims for retaliation, harassment, deliberate indifference, cruel and unusual punishment, and denial of due process against fourteen defendants who work at Bridgeport Correctional Center ("Bridgeport"): Warden Robert Martin; Deputy Warden Nathan Klein; Counselor Supervisor Maria Alves; Counselors Moore-DeCaito and McCarthy; Officers Massaro, Sullivan, Serrano, and Lee; Lieutenants Roman, Grady, McNeil, and Finuccan; and Captain Allen. He seeks damages and unspecified declaratory and injunctive relief against the defendants in their individual and official capacities. The complaint was received on December 13, 2019, and Conquistador's motion to proceed *in forma pauperis* was granted on December 20, 2019.

On December 24, 2019, Conquistador filed a motion to amend seeking to add a failure to protect claim and five additional defendants: Lieutenants Washington and Hernandez, and

Officers Guerrera, Daniels, and John Doe 1.  For relief, Conquistador seeks increased damages, a change in department policy and a transfer to a different facility.  As the defendants have not yet responded to the complaint, Conquistador may file an amended complaint as of right.  *See* Fed. R. Civ. P. 15(a)(1)(B).  Thus, Conquistador's motion to amend is granted.  The court will review the claims in the amended complaint in this order.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  *Id.*  In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

On August 30, 2019, Conquistador was admitted to Bridgeport Correctional Center ("Bridgeport") as a pretrial detainee.  Doc. No. 8 ¶ 1.  Conquistador asked defendants McCarthy

and Moore-DeCaito for a toothbrush and toothpaste, shampoo, deodorant, and soap on multiple occasions, but did not receive them. *Id.* ¶ 2. Defendants McCarthy and Moore-DeCaito told Conquistador that their supervisor, defendant Alves, had instructed them not to give him any toiletries. *Id.* ¶ 3.

On multiple occasions, Conquistador's legal documents were not filed because they were double-sided. *Id.* ¶ 4.

Once, defendant Massaro entered Conquistador's cell and placed some of his legal files in the toilet. *Id.* ¶ 5. He then left the cell stating that he was doing "spring cleaning." *Id.* This occurred immediately after Conquistador threatened to sue defendant Massaro. *Id.*

At 2:45 p.m. on November 7, 2019, defendant Roman yelled in the 37B2 corridor that Conquistador "was telling on other inmates." *Id.* ¶ 6. At 10:15 p.m. on November 2, 2019, defendant Sullivan approached Conquistador and stated, "what you wanna do" and "do something." *Id.* ¶ 7. Defendant Sullivan waited a moment and then called Conquistador a "bitch" and a "rat." *Id.* After these statements were made, Conquistador was threatened and confronted by several gang members. *Id.* ¶ 8. Several correctional employees witnessed the interactions with gang members. *Id.* ¶ 9.

A few days after Conquistador threatened to sue her, defendant Serrano, the disciplinary investigator at Bridgeport, refused to record Conquistador's statement and witness information for a disciplinary hearing. *Id.* ¶ 10. Conquistador told defendant Serrano that her actions violated his right to due process and again threatened to sue her. *Id.* ¶ 11. On one occasion, defendant Serrano told Conquistador that he was "all set for making his little threats." *Id.* ¶ 12.

On November 6, 2019, defendant Lee issued Conquistador a disciplinary report for being

out of place.  *Id.* ¶ 14.  Conquistador asked defendant Serrano to arrange for him to view the relevant video footage.  *Id.* ¶ 15.  She refused to do so.  *Id.* ¶ 16.  Conquistador has not viewed the footage.  *Id.* ¶ 17.  At the hearing, defendant McNeil said, "since you want to run around here threatening to sue my staff, I'm finding you guilty."  *Id.* ¶ 18.  Defendant McNeil told Conquistador that he would impose the maximum recommended sanctions.  *Id.*  Conquistador received sanctions of fifteen days confinement to quarters and ninety days loss of phone privileges.  *Id.* ¶ 19.

Multiple times, Conquistador told defendants Martin, Klein, Alves, Grady, Finuccan, and Allen about his concerns regarding the threats and confrontations with gang members.  *Id.* ¶ 20. They ignored his concerns.  *Id.*  Conquistador also expressed his concerns about the refusal to move him to a different housing unit at Bridgeport.  *Id.* ¶ 21.  Defendants Martin, Klein, Alves, Grady, Finuccan, and Allen ignored these concerns also.  *Id.*

Several times, Conquistador asked defendants Martin, Klein, and Alves about the denial of toiletries.  *Id.* ¶ 22.  His concerns were ignored.  *Id.*  Conquistador threatened to sue defendants Martin, Klein and Alves.  *Id.* ¶ 23.  Defendant Martin replied that Conquistador would be "put somewhere where he would be trying to figure it out."  *Id.*

Several time, Conquistador complained to defendants Martin, Klein, and Alves that it was cold outside, the ventilation system was blowing cold air, and cold air was coming in through the window in his cell.  *Id.* ¶ 24.  The defendant disregarded his concerns.  *Id.* Conquistador requested an additional blanket because of the cold.  *Id.* ¶ 25.  The request was denied.  *Id.* ¶ 26.

On several occasions, defendants McCarthy and Moore-DeCaito told Conquistador that

defendant Alves instructed them to charge him $.25 per page before electronically filing documents for him. *Id.* ¶ 27.

On December 19, 2019, Conquistador told defendants Washington and Hernandez that he had been threatened by several inmates. *Id.* ¶ 28. He told them he would be assaulted if he returned to the housing unit. *Id.* Defendant Hernandez said "good, we'll have a reason to put you in seg." *Id.* Defendant Washington stated they could do nothing for him. *Id.* Defendant Guerrera was present during this conversation. *Id.* Conquistador expressed his concerns to defendants Daniels and Doe 1 but they did nothing. *Id.* ¶ 29. That afternoon, between 12:00 p.m. and 12:20 p.m., an inmate entered Conquistador's cell and assaulted him. *Id.* ¶ 30. Later in the afternoon, Conquistador was moved to a different housing unit. *Id.* ¶ 34. Conquistador asked defendant Martin to preserve the video footage of him speaking to defendants Washington and Hernandez and the inmate entering his cell. *Id.* ¶ 30 & Ex. Z.

**Discussion**

Conquistador purports to bring constitutional claims for retaliation, "harassment," denial of due process, and deliberate indifference to his safety/failure to protect him. He seeks damages and injunctive relief against the defendants in their individual and official capacities.

### Conditions of Confinement

Conquistador alleges that defendants McCarthy and Moore-DeCaito denied him toiletries at the direction of defendant Alves. As he does not indicate the length of the deprivation, the court assumes that Conquistador was denied toiletries for approximately four months, from August 30, 2019, until December 22, 2019, the date he signed the Amended Complaint. Conquistador also alleges that he complained to defendants Martin, Klein, and Alves about cold

5

temperatures in his cell and requests an additional blanket, but his concerns were ignored.

"A pretrial detainee may not be punished at all under the Fourteenth Amendment" whether by being subjected to unconstitutional conditions of confinement or otherwise. *Darnell v. Piniero*, 849 F.3d 17, 35 (2d Cir. 2017); *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."). When considering whether the conditions imposed on a pretrial detainee violate due process, the "court must decide whether the [condition] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Bell*, 441 U.S. at 538. If the plaintiff cannot show an "expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the condition] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned'" *Id*. "[I]f a restriction or condition is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id*. at 539. On the other hand, if the condition "is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment…." *Id*. The Supreme Court has identified several legitimate governmental interests such as ensuring the detainee's presence at trial, maintaining institutional security and order, and ensuring that detainees do not have access to weapons or illicit drugs. *Id.* at 540.

Conquistador alleges that he was denied toiletries on defendant Alves' order. He does not allege that he was given any other reason for the denial. Denying toiletries does not implicate any obvious legitimate governmental interest. Accordingly, construing the amended

complaint liberally, Conquistador states a plausible 14th Amendment claim for unconstitutional conditions of confinement against defendants McCarthy, Moore-DeCaito, and Alves. *Accord Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) ("[T]his court and other circuits have recognized that deprivation of toiletries, and especially toilet paper, can rise to the level of unconstitutional conditions of confinement); *Atkins v. County of Orange*, 372 F. Supp. 2d 377, 406 (S.D.N.Y. 2005) (noting that failure to regularly provide prisoners with toiletries including soap, razors, combs, toothpaste, and toilet paper constitutes a denial of personal hygiene and sanitary living conditions in violation of the Eighth Amendment).

Similarly, subjecting Conquistador to excessive cold does implicate any obviously legitimate governmental interest. *See Benjamin v. Fraser*, 343 F.3d 35, 52 (2d Cir. 2003) (affirming district court's conclusion that "exposure to extremes of temperature violated detainees' constitutional rights"), *overruled on other grounds by Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009). The case will also proceed on a 14th Amendment conditions of confinement claim against defendants Martin, Klein, and Alves for the alleged exposure to cold temperatures

### Retaliation and Harassment

Conquistador alleges that various defendants retaliated against him because he threatened to file lawsuits against them. Specifically, he alleges that following his threats to sue them, defendant Massaro placed legal files in the toilet, defendant Serrano refused to record his statement or witness information for to a disciplinary proceeding, and then made a comment about his threats, defendant McNeil found him guilty of another disciplinary report and imposed the maximum sentence, and defendant Martin made an allegedly threatening comment to him. Although Conquistador makes reference to "harassment," he does not attribute any particular

factual allegations to harassment as distinct from his retaliation or other claims. In any event, verbal harassment generally does not implicate harm of constitutional magnitude. *See Byrd v. City of New York*, No. 17 Civ. 2166(AJP), 2018 WL 259316, at *5 (S.D.N.Y. Jan. 2, 2018) (rejecting detainee's claim of verbal harassment). Therefore, the Court considers the harassment allegations in the context of Conquistador's retaliation claims.

To state a claim for retaliation, Conquistador must allege facts demonstrating three elements: (1) he engaged in protected speech or conduct, (2) the defendant took an adverse action against him, and (3) there was a causal connection between the protected speech and the adverse action. *Dilan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). Although the Second Circuit has not addressed this issue and other courts are divided, some courts have found that a prisoner's threat to file a grievance or lawsuit is sufficient to be considered protected speech. *See Gibson v. Fischer*, No. 9:10-cv-0968(LEK/TWD), 2014 WL 7178346, at *16 (N.D.N.Y. Dec. 15, 2014) (noting split of authority and finding issue of fact precluding summary judgment whether plaintiff's conduct warranted First Amendment protection) (citing cases). For purposes of this order only, the Court will assume that Conquistador's threats to file lawsuits are protected speech.

Whether conduct is considered adverse, depends on the context in which it occurs. "Conduct that is properly initiated, reasonably executed, independently justified and equally administered—regardless of any animosity towards the plaintiff—does not rise to a constitutional claim for retaliatory harassment." *Diezel v. Town of Lewisboro*, 232 F.3d 92, 109 (2d Cir. 2000). And prisoners may be required to tolerate more than public employees or average citizens before an action is considered adverse. *Id.* "[I]n the prison context, [the Second Circuit

has] defined 'adverse action' objectively, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising … constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citations and quotation marks omitted).  However, the conduct complained of need not rise to the level of a constitutional violation to be considered adverse action for purposes of a retaliation claim.  *See McCarroll, v. Matteau*, No. 9:09-CV-0355(NAM/TWD), 2012 WL 4380156, at *12 (N.D.N.Y. June 15, 2012).

Conquistador alleges that defendant Martin commented that Conquistador could be put "somewhere" in response to the threat to sue and that defendant Serrano commented that he was "all set" because of his threats.  Although verbal threats can constitute adverse action, "the less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights."  *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010).  Here, defendants Martin and Serrano did not make any specific threat.  Thus, Conquistador fails to satisfy the second element to state a retaliation claim against defendant Martin or against defendant Serrano for her comment.  *See Barnes v. Alves*, 58 F. Supp. 3d 296, 316-17 (W.D.N.Y. 2014) (general threat to "get" inmate insufficient to constitute adverse action to support a retaliation claim).

Conquistador alleges that defendant Massaro placed some of his legal files in the toilet. Although theft of legal documents has been held an adverse action, temporary interference with legal documents is not considered an adverse action.  *See Edwards v. Horn*, No. 10 Civ. 6194(RJS)(JLC), 2012 WL 760172, at *16 (S.D.N.Y. Mar. 8, 2012) (citing cases).  It is not clear from the complaint whether the documents were destroyed.  Thus, for purposed of this order only, the Court will assume that defendant Massaro's conduct constitutes an adverse action.

Conquistador alleges that defendant Serrano refused to write down his statement or witness information when investigating a disciplinary report, and that defendant McNeil found him guilty of a second disciplinary report and imposed maximum sanctions because he threatened to file lawsuits. For purposes of this order, the Court will assume that these actions would deter an inmate of ordinary firmness from exercising his constitutional right to file a lawsuit. The fact that Conquistador himself was not deterred from filing lawsuits does not negate the second element. *See Gill*, 389 F.3d at 381.

Conquistador also must allege sufficient facts to establish a causal connection between his protected speech and the adverse action. Temporal proximity may serve as circumstantial evidence of retaliation. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). The Second Circuit has held that, under some circumstances, temporal proximity can establish causality. *See Espinal v. Goord*, 558 F.3d 119, 129-30 (2d Cir. 2009) (finding that six months between dismissal of lawsuit against correctional officers and beating by one of those officers sufficient to support inference of causal connection). Conquistador alleges that the incidents occurred days after he threatened lawsuits. At this stage of litigation, the allegation is sufficient to plausibly allege a causal connection.

The retaliation claim against Martin is dismissed. The retaliation claims against Massaro and McNeil will proceed. The retaliation claim against Serrano will proceed only with respect to the allegations that Serrano failed to take Conquistador's statement regarding the disciplinary report.

**Access to Courts**

Conquistador alleges that on multiple occasions his legal documents were not

electronically filed because they were double-sided, and on other occasions defendants McCarthy and Moore-DeCaito told Conquistador that defendant Alves instructed them to charge him $.25 per page before electronically filing documents for him. The Court assumes that this was because Conquistador submitted double-sided documents which must be copied as single-sided documents before they can be electronically filed.

To state a claim for denial of access to the courts, Conquistador must show that the defendants acted deliberately and maliciously and that he suffered an actual injury. *Lewis v. Casey*, 518 U.S. 343, 353 (1996). To constitute an actual injury, the defendants' actions must have hindered his efforts to pursue a legal claim, prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts. *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 2002). Conquistador alleges no facts suggesting that he suffered an actual injury. Thus, he fails to state a plausible claim for denial of access to the courts and this claim is dismissed.

**Due Process**

Conquistador includes allegations relating to two separate disciplinary reports. Regarding the first report, he alleges only that defendant Serrano did not write down his statement or witness information. Regarding the second disciplinary reports, Conquistador alleges that defendant Lee issued the disciplinary report for being out of place, that defendant Serrano refused his request to view video surveillance footage, and that defendant McNeil found him guilty and imposed maximum sanctions merely because he threatened to file lawsuits against correctional staff.

The Fourteenth Amendment to the United States Constitution provides that a State shall

11

not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. The analysis of a due process claims has two steps. "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam).

Regarding the first disciplinary report, Conquistador does not allege that he was found guilty of the report or was sanctioned in any way. Thus, the Court cannot discern any right to liberty or property that was implicated by defendant Serrano's action. Any due process claim based on the first disciplinary report is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Conquistador alleges that he was found guilty of the second disciplinary report and was sanctioned with fifteen days confinement to quarters and ninety days loss of telephone privileges. Because the proceeding was disciplinary, due process requires that Conquistador receive "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relief upon that the reasons for the disciplinary actions taken." *Williams v. Chuttey*, 767 F. App'x 105, 107 (2d Cir. 2019) (quoting *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (internal quotation marks omitted).

Conquistador alleges that defendant McNeil told him that he was being found guilty and receiving maximum sanctions because he threatened to sue staff. This plausibly states a claim that the hearing officer was not fair and impartial. The due process claim against defendant McNeil will proceed.

Conquistador alleges that defendant Serrano refused his request to view surveillance recordings. The due process protections listed above afford Conquistador a reasonable opportunity to present evidence in his defense. He could have requested that the surveillance tape be viewed by the hearing officer or investigator, or presented at the hearing. He does not allege that he did so. The facts alleged do not demonstrate that defendant Serrano violated Conquistador's right to due process and this claim against her is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Court assumes that Conquistador has named defendant Lee because he believes that the charge was false. A false disciplinary charge is cognizable only where the inmate is denied due process at the associated disciplinary hearing. *Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005). Conquistador alleges that he was denied a fair hearing because he was found guilty based on his threats of lawsuits and not on any evidence relating to his location. Thus, his false accusation claim will proceed against defendant Lee.

**Deliberate Indifference/Failure to Protect**

Conquistador alleges that defendants Roman and Sullivan announced in the housing unit that Conquistador informed on other inmates and, after these statements, he was repeatedly confronted and threatened by gang members. Although Conquistador brought his concerns to defendants Martin, Klein, Alves, Grady, Finuccan, Allen, Washington, Hernandez, Guerrera, Daniels, and Doe, no action was taken. As a result, Conquistador was assaulted by another inmate.

In *Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466, 2473 (2015), the Supreme Court held that a pretrial detainee asserting a claim for use of excessive force need only meet an

13

objective standard.  In *Darnell*, the Second Circuit held that the reasoning from Kingsley should be applied to other pretrial detainee claims involving deliberate indifference including claims for deliberate indifference to safety or failure to protect from harm.  849 F.3d at 35-36 & 33 n.9.

To state a claim for deliberate indifference to safety or failure to protect, Conquistador must show that he was confined under conditions that posed a substantial risk of serious harm and that the defendants both knew that he faced a substantial risk of serious harm and failed to take reasonable efforts to abate that harm.  *See Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Lewis v. Swicki*, 629 F. App'x 77, 79 (2d Cir. 2015) (citing *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)).  Regarding the second part of the test, "a pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that condition imposed an excessive risk to health or safety."  *Id.* at 35.

Conquistador alleges that defendants Roman and Sullivan identified him as an informant to other inmates.  Courts within the Second Circuit have held that being labeled as an informant can pose a threat to inmate health and safety.  *See Corley v. City of New York*, No. 1:14-cv-3202GHW, 2017 WL 4357662, at *13 (S.D.N.Y. Sept. 26, 2017) (citing cases).  Conquistador alleges that defendants Roman and Sullivan made these statements deliberately.  Thus, Conquistador sufficiently states a deliberate indifference to safety claim against defendants Roman and Sullivan.

Conquistador also alleges that, after being threatened and confronted by gang members, he brought his concerns to defendants Martin, Klein, Alves, Grady, Finuccan, Allen,

Washington, Hernandez, Guerrera, Daniels, and Doe. No one took any action to address his concerns and, as a result, Conquistador was assaulted. These allegations are sufficient to state a plausible failure to protect claim.

**Motions for Preliminary Injunctive Relief**

Conquistador also has filed two motions seeking preliminary injunctive relief. Interim injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Grand River Enterprise Six Nations Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citation omitted). To prevail, the plaintiff must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, ___ U.S. ___, 135 S. Ct. 2726, 2736 (2015) (internal quotation marks and citation omitted). The Second Circuit considers a showing of irreparable harm the most important requirement for an award of preliminary injunctive relief. *NAACP v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir. 1995). The irreparable injury prerequisite requires proof of harm that is "actual and imminent" and "not remote or speculative." *Pisarri v. Town Sports Int'l, LLC*, 758 F. App'x 188, 190 (2d Cir. 2019) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (internal quotation marks omitted)).

Where the plaintiff seeks a mandatory injunction, *i.e.*, an injunction seeking to order the defendants to perform positive acts, he must meet a higher standard. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010)). A mandatory preliminary

15

injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from the denial of preliminary relief." *Id.* (citing *Citigroup Global Mkts.*, 598 F.3d at 35 n.4 (internal quotation marks omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entertainment Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (plaintiff seeking mandatory injunction must make "clear" or "substantial" showing of likelihood of success on the merits of his claim).

The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994) (other citations omitted).

In addition, because the plaintiff must demonstrate a likelihood of success on the merits of his claims in the complaint to obtain preliminary injunctive relief, the injunctive relief requested must relate to those claims. *See, e.g., De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunction appropriate to grant intermediate relief of "the same character as that which may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit"); *Torres v. UConn Health,* 2017 WL 3713521, at *2 (D. Conn. Aug. 29, 2017) (preliminary injunctive relief not warranted because claim in motion was unrelated to underlying claims in complaint).

In the first motion, Conquistador states that the defendants refuse to provide him free envelopes because, even though he has only $.06 in his inmate account, he does not meet the

indigency requirement.  He claims to need envelopes to correspond with "the CT District Courts, Second Circuit Court of Appeals, CT Superior Courts, CT Commission on Human Rights & Opportunities, CT Freedom of Information Commission, Inmates Legal Assistance Program, and other people and places."  Doc. No. 7 at 2.  In his second motion, Conquistador states that defendant Moore-DeCaito is denying him photocopies of his legal documents.  He contends that he is dealing with several lawyers and must provide them copies of his filings.  He also claims a right to possess copies of his filings.

Conquistador is required to file all documents in this court using the Prisoner Efiling Program.  Under that program, opposing counsel receives an electronic copy of any document Conquistador files and Conquistador retains the original.  Under the program, Conquistador is not permitted to file any documents by mail. As he does not need to mail copies of any filings in this case and retains the originals of all documents he files, Conquistador's claimed need for copies and envelopes is unrelated to the prosecution of this case.  Further, Conquistador has submitted a response from correctional officials explaining that he will be eligible for indigent supplies when the balance in his inmate account is under $5.00 for ninety consecutive days. Thus, as Conquistador is only temporarily denied supplies, he has not shown that he will suffer irreparable harm.  Conquistador's motions are denied.[1]

## CONCLUSION

Conquistador's motion to amend [**Doc. No. 8**] is **GRANTED**.  The Clerk is directed to

---

[1] Conquistador continues to file motions in this matter even though the defendants have neither been served nor appeared.  All other pending motions will be taken up in due course and after the defendants have been given the opportunity to respond.

docket the proposed amended complaint.

The retaliation and harassment claim against defendant Martin and against defendant Serrano based on her commentary, the due process claim against defendant Serrano, and any claims for denial of access to the courts are **DISMISSED**. The case will proceed on the conditions of confinement claims against defendants McCarthy, Moore-DeCaito, Alves, Martin, and Klein; the remaining retaliation claims against defendants Serrano, McNeil, and Massaro; the due process claim against defendants Lee and McNeil; and the deliberate indifference/failure to protect claim against defendants Roman, Sullivan, Martin, Klein, Alves, Grady, Finuccan, Allen, Washington, Hernandez, Guerrera, Daniels, and Doe. Claims for damages shall be permitted against the defendants in their individual capacities only. Claims for injunctive relief shall proceed against the defendants in their official capacities only.

Conquistador's motions for preliminary injunctive relief [**Doc. Nos. 7, 9**] are **DENIED**.

The court enters the following additional orders:

(1)     **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain the service or current work address for defendants McCarthy, Moore-DeCaito, Alves, Martin, Klein, Serrano, McNeil, Massaro, Lee, Roman, Sullivan, Grady, Finuccan, Allen, Washington, Hernandez, Guerrera, and Daniels, mail a waiver of service of process request packet containing the Amended Complaint to each defendant at the addresses provided on or before **January 31, 2020**, and report to the court on the status of the waiver requests on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or

her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service.  The U.S. Marshal is directed to effect service of the Amended Complaint on defendants McCarthy, Moore-DeCaito, Alves, Martin, Klein, Serrano, McNeil, Massaro, Lee, Roman, Sullivan, Grady, Finuccan, Allen, Washington, Hernandez, Guerrera, and Daniels in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, on or before **January 31, 2020** and to file a return of service on or before **February 10, 2020.**

(3)     **The Clerk shall** send the plaintiff a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Amended Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The defendants shall file their response to the amended complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver form is sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They also may include all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed on or before August 10, 2020.  Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed on or before September 10, 2020.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.   The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10)     The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  The plaintiff is advised that the Program may be used only to file documents with the court.  Local court rules provide that discovery requests are not filed with the court.  D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

(11)     The court cannot effect service on defendant John Doe without his full name and current work address.  Conquistador is directed to obtain this information through discovery and file a notice identifying this defendant.  Once defendant Doe has been identified, the court will order service.

(12)     **The Clerk shall** immediately enter the Standing Order Re: Initial Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** at Bridgeport, Connecticut, this 10th day of January 2020.

_____/s/_____
Kari A. Dooley
United States District Judge